# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 1:22-cv-02530-NYW

MOSES OLUMUYIWA WRIGHT SOMOLU and
CARLYS HUNT,

    Plaintiffs,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,
ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security,
UR MENDOZA JADDOU, Director, U.S. Citizenship and Immigration Services,
ANDREW LAMBRECHT, Field Office Director, U.S. Citizenship and Immigration Services Field Office at Denver, Colorado, and
DAVID H. WETMORE, Chief Appellate Immigration Judge, Board of Immigration Appeals,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Complaint for Mandamus, Injunctive and Declaratory Relief (the "Complaint") by Plaintiffs Moses Olumuyiwa Wright Somolu ("Mr. Somolu") and Carlys Hunt ("Ms. Hunt" and collectively, "Plaintiffs"). [Doc. 1]. Plaintiffs filed their Opening Brief on May 2, 2023, [Doc. 19], and Defendants filed their Response Brief on June 16, 2023, [Doc. 20]. The Joint Case Management Plan for Petition for Review of Agency Action provided for Plaintiffs to file a Reply Brief within fifteen days, but no brief or motion for extension has been filed. [Doc. 18 at 3]. The issues have been fully briefed and are ripe for resolution without the need for oral argument. For the reasons stated below, the Court respectfully **DENIES** the relief sought in the Complaint.

## BACKGROUND

The following facts are drawn from the Administrative Record.[1]  On April 1, 2019, Ms. Hunt filed Form I-130, Petition for Alien Relative, and Mr. Somolu filed a related Form I-485 requesting to adjust his status to a lawful permanent resident.  [Doc. 15-5 at 284–95].  An I-130 petition is filed by a U.S. Citizen or lawful permanent resident on behalf of an alien relative to permit that relative to adjust status and become a lawful permanent resident in the United States.  8 U.S.C. § 1154(a)(1)(A)(i).  Ms. Hunt is a United States citizen.  [Doc. 15-5 at 285; Doc. 15-6 at 309].  Mr. Somolu is a native of Nigeria.  [Doc. 15-5 at 288; Doc. 15-6 at 307].  They married on November 8, 2018, in Denver, Colorado.  [Doc. 15-6 at 328].

Defendant United States Citizenship and Immigration Services ("USCIS") initially adjudicates I-130 petitions.  8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1), (b).  If a USCIS officer determines the petition lacks sufficient evidence to grant, the officer will issue a Notice of Intent to Deny ("NOID") that specifies "the type of evidence required . . . or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond."  8 C.F.R. § 103.2(b)(8)(iv).  If USCIS denies the petition, the officer notifies the petitioner of the reasons for the denial and of the right to appeal to the Board of Immigration Appeals ("BIA").  8 C.F.R. § 204.2(a)(3); 8 C.F.R. §§ 1003.1(b)(5), 1003.3(a)(2).

Mr. Somolu's marriage to Ms. Hunt is his third marriage since he entered the United States on April 17, 2014, on a B-1/B-2 nonimmigrant visa.  [Doc. 15-9 at 513; Doc. 15-5 at 290].[2]  On

---

[1] When citing to the Administrative Record, the Court uses the docket number assigned by the United States District Court for the District of Colorado's Electronic Court Filing ("ECF") system and page number found in the bottom right-hand corner of the page.  For all other documents, the court cites to the document and page number generated by the ECF system.

[2] Mr. Somolu was previously married in Ghana.  He asserts that he divorced his first wife.  [Doc. 15-1 at 74].  Defendants note conflicting evidence and contrary findings in the record, *see, e.g.*, [Doc. 15-12 at 655, 669; Doc. 15-17 at 1011–18], but this does not form any part of the basis of

September 18, 2014, Mr. Somolu married Taylor Ruben. [Doc. 15-10 at 604; Doc. 15-12 at 655]. They divorced on July 5, 2016. [Doc. 15-10 at 599; Doc. 15-12 at 655]. On June 6, 2017, Mr. Somolu married Kimberly Fisher Johnson ("Ms. Johnson"). [Doc. 15-10 at 594]. On July 17, 2017, Ms. Johnson filed an I-130, Petition for Alien Relative, on behalf of Mr. Somolu, and he filed a related Form I-485 requesting to adjust his status to a lawful permanent resident. [Doc. 15-9 at 461; Doc. 15-10 at 551–63; Doc. 15-12 at 655]. These petitions were ultimately abandoned and withdrawn, respectively, after Ms. Johnson failed to appear for an interview. [*Id*. at 461, 466, 495]. On October 22, 2018, Mr. Somolu and Ms. Johnson finalized their divorce. [Doc. 15-6 at 313]. Mr. Somolu had proposed to Ms. Hunt six months earlier, and they married shortly after his latest divorce was finalized. [Doc. 15-1 at 78]. They filed the petitions that are the subject of this case approximately six months later.

USCIS conducted two interviews with Plaintiffs. These interviews revealed apparent discrepancies that were relied on in the decision on appeal. First, neither Plaintiff could recall the name of the hotel they stayed at for their honeymoon, and they gave different accounts of when and for how long they stayed there. [Doc. 15-4 at 236]. Next, Plaintiffs had discrepancies in the amount they paid for the couple's wedding rings. [*Id*.]. When the officer confronted Ms. Hunt about this inconsistency, she stated that she "needed to come clean" and stated that the rings were purchased from a pawn shop. [*Id*.]. Similarly, Plaintiffs gave different accounts of their first date, including the location and when it occurred. [*Id*.]. Last, Ms. Hunt incorrectly reported Mr. Somolu's work schedule, and Mr. Somolu did not know the couple's current or prior address. [*Id*.].

---

the decision on appeal, *see* [Doc. 15-1 at 43–46 (listing documents upon which the USCIS based the decision that was subsequently adopted by the BIA)].

During the review of the petitions, a USCIS Immigration Officer referred Ms. Hunt's I-130 petition for a fraud investigation by the USCIS Fraud Detection and National Security Directorate ("FDNS") based on a suspicion that her marriage was for the purpose of evading immigration laws. [Doc. 15-12 at 653]. Such marriages are commonly referred to as "sham marriages" or as "marriage fraud," in contrast to "*bona fide* marriages." FDNS decided to also investigate Mr. Somolu's prior marriage to Ms. Johnson. [*Id.*].

In a phone call with FDNS, Ms. Johnson admitted that her marriage to Mr. Somolu was a sham for the purpose of helping Mr. Somolu obtain lawful permanent resident status. [*Id.* at 669, 671–74; Doc. 15-13 at 685–87]. Ms. Johnson stated that the two did not have a romantic relationship, live together, or consummate their relationship. [Doc. 15-12 at 673; Doc. 15-13 at 686]. Ms. Johnson explained that she did not attend the USCIS interview for the I-130 because she did not want to "tell them lies." [Doc. 15-12 at 669]. She later confirmed the accuracy of a summary of her statements prepared by FDNS. [Doc. 15-12 at 671]. FDNS also contacted Ms. Johnson's landlord, who stated that the joint lease submitted as part of Ms. Johnson and Mr. Somolu's petitions was falsified. [Doc. 15-12 at 666; Doc. 15-13 at 703–16; Doc. 15-14 at 735–36].[3]

On February 18, 2021, USCIS issued a NOID for Ms. Hunt's I-130 because (1) she failed to establish that her marriage to Somolu was *bona fide* and (2) Somolu's prior sham marriage to Ms. Johnson barred approval of Ms. Hunt's I-130 under 8 U.S.C. § 1154(c). [Doc. 15-4 at 235–37]. Ms. Hunt timely responded to the NOID by providing additional evidence[4] and arguing

---

[3] The listed financial sponsors on Ms. Johnson's petition also claimed to have no knowledge of the petition and stated that their signatures were forged, but this does not form a basis for the decision on appeal. [Doc. 15-12 at 668; Doc. 15-14 at 724–30].

[4] This evidence included Plaintiffs' verified statements, unsigned tax returns, financial statements from a joint account, and photos. [Doc. 15-1 at 71–104; Doc. 15-2 at 105–69; Doc. 15-3 at

that the minor inconsistencies during the interviews did not justify finding the marriage was not *bona fide*. [Doc. 15-1 at 61–62]. Plaintiffs also argued that Ms. Johnson's statements to FDNS could not be relied upon because they were not sworn and Ms. Johnson has a history of mental health issues, according to a verified statement of Mr. Somolu. [*Id*. at 60–61, 74–76]. USCIS disagreed and issued a decision denying Ms. Hunt's petition on the same two grounds raised in the NOID. [*Id*. at 42–48].

Plaintiffs timely appealed the USCIS decision to the BIA. [Doc. 15-1 at 30–40]. Plaintiffs renewed their arguments, but these arguments were again rejected by the BIA. [*Id*. at 1–5]. With respect to the first basis for denial, that Ms. Hunt had not shown a *bona fide* marriage to Mr. Somolu, the BIA adopted and affirmed the USCIS's decision, finding that the USCIS applied the correct burden of proof and "properly assessed the validity of the marriage between the petitioner and the beneficiary and the record supports [its] decision." [*Id*. at 3]. Regarding the second basis for denial, marriage fraud with Ms. Johnson, the BIA discussed the evidence supporting the USCIS's decision and the evidence provided by Plaintiffs. [*Id*. at 3–4]. The BIA rejected as insufficiently supported Plaintiffs' assertions of mental illness related to Ms. Johnson's statements and found that Plaintiffs had presented nothing to refute the FDNS's findings that the joint lease was forged. [*Id*. at 4–5]. The BIA's decision dismissing Ms. Hunt's petition is the final agency decision for the purposes of appeal and the subject of this Court's review. *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1297 (10th Cir. 2011).[5]

---

170–202; Doc. 15-4 at 203–33]. The USCIS found that the transactions in the joint accounts did not show a commingling of assets because the "beneficiary is still depositing his earnings into the account while [Ms. Hunt] will occasionally transfer in $100 or $200 but [Ms. Hunt] then also transfer[s] out that same amount back to [Ms. Hunt's individual] account." [Doc. 15-1 at 47].

[5] Throughout their brief, Plaintiffs challenge the decisions of the USCIS. *See, e.g.*, [Doc. 19 at 19]. The Court infers that Plaintiffs are challenging BIA's adoption and affirmation of the USCIS's decision and construes their arguments as challenging the BIA decision on the same grounds as they challenge USCIS's decision.

Plaintiffs filed suit on September 28, 2022, seeking judicial review of the BIA's decision pursuant to 8 U.S.C. § 1421(c). *See* [Doc. 1]. The case was originally assigned to the Honorable Robert E. Blackburn, [Doc. 2], but was reassigned to the undersigned judicial officer on September 11, 2023, [Doc. 21]. With this factual and procedural background in mind, the Court turns to consideration of the standards that will govern its analysis in this matter.

## STANDARD OF REVIEW

The Immigration and Nationality Act classifies an alien who marries a U.S. citizen as an "immediate relative." *See* 8 U.S.C. § 1151(b)(2)(A)(i). To receive an immigrant visa based on marriage, the U.S. citizen spouse must file Form I-130, Petition for Alien Relative, showing the legality of the marriage. 8 C.F.R. § 204.2(a)(1), (a)(1)(iii)(B). Without the I-130 petition, the immigrant cannot receive the requisite immigrant visa required to adjust status as part of a related Form I-485 application. *See* 8 C.F.R. § 103.2(b)(1). Thus, permanent resident status is not available without the agency's approval of the Form I-130 petition. *See id*.

An I-130 petitioner bears the burden of proof to show that the petitioner is entitled to the relief requested. *Matter of Phillis*, 15 I. & N. Dec. 385, 386 (BIA 1975) ("[T]he burden is on the petitioner to establish eligibility for the benefits sought."); *Granados v. Lynch*, 633 F. App'x 497, 499 (10th Cir. 2015) ("[W]e presume that agency actions are valid, and the party challenging the agency action . . . bears the burden of proving otherwise."). For a petition based on a marriage, the petitioner must demonstrate that the beneficiary can be classified as his or her spouse. *See* 8 C.F.R. § 204.2(a). To do so, the petitioner must show by a preponderance of the evidence that the marriage was legally valid, *bona fide* at its inception, and "not entered into for the purpose of evading the immigration laws." *Matter of Laureano*, 19 I. & N. Dec. 1, 3 (BIA 1983). "The fundamental question in assessing whether a couple entered into a good-faith marriage in this

6

context is whether they 'intended to establish a life together at the time they were married.'" *Vladimirov v. Lynch*, 805 F.3d 955, 961 (10th Cir. 2015) (quoting *Ibrahimi v. Holder*, 566 F.3d 758, 764–65 (8th Cir. 2009)). In making this determination, USCIS "shall consider evidence relating to the amount of commitment by both parties to the marital relationship," including documentation of mixed financial assets and cohabitation. 8 C.F.R. § 216.5(e)(2).[6]

Plaintiffs' challenge is brought under the Administrative Procedure Act ("APA"). [Doc. 1]. Once agency action is challenged as arbitrary or capricious, a district court reviews that action under the APA as if it were an appellate court. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). Under the APA, a reviewing court will "hold unlawful and set aside agency action, findings, and conclusions" that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Typically, "[a]n agency's action is entitled to a presumption of validity, and the burden is upon the petitioner to establish the action is arbitrary or capricious." *Sorenson Commc'ns, Inc. v. FCC*, 567 F.3d 1215, 1221 (10th Cir. 2009). As part of the appeal, the Court "ascertain[s] whether the agency examined the relevant data and articulated a rational connection between the facts found and the

---

[6] Although the Court does not reach the issue of marriage fraud, 8 U.S.C. § 1154(c) provides that no visa petition shall be approved if the noncitizen previously sought to be accorded an immigration benefit by reason of a marriage determined to have been entered into for the purpose of evading immigration law. *See also* 8 C.F.R. § 204.2(a)(1)(ii). In reviewing a determination that a person entered into a sham marriage, courts apply a "substantial and probative evidence" standard of review. *Akopyan v. Sessions*, No. 17-cv-01724-RBJ, 2018 WL 6249885, at *4 (D. Colo. Nov. 29, 2018), *aff'd sub nom. Akopyan v. Barr*, 786 F. App'x 829 (10th Cir. 2019). Under this standard, where a visa petition is denied under 8 U.S.C. § 1154(c) based on marriage fraud, the record must contain substantial and probative evidence of such fraud. *Matter of P. Singh*, 27 I. & N. Dec. 598, 605–06 (BIA 2019). To be "substantial and probative," the evidence must establish that it is more than probably true that the marriage is fraudulent. *Id*. at 607; *see also Matter of Tawfik*, 20 I. & N. Dec. 166, 167–68 (BIA 1990) ("[A] reasonable inference does not rise to the level of substantial and probative evidence requisite to the preclusion of approval of a visa petition in accordance with section 204(c)."); *Abdulahad v. Holder*, 581 F.3d 290, 294–96 (6th Cir. 2009).

decision made." *Olenhouse*, 42 F.3d at 1574 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983)).  That is, the Court "must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment." *Id*.  Although the BIA's decision is the final decision on appeal, the Court may look to the underlying USCIS decision in situations where the BIA incorporates the USCIS rationale or a summary of its reasoning.  *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006) (citing *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006)).  These standards will govern the Court's review of this dispute.

## ANALYSIS

Plaintiffs have not shown that the BIA erred in denying their petitions because they do not overcome both bases under which their petitions were denied.  Plaintiffs' Opening Brief is addressed solely to the second basis on which the BIA denied Ms. Hunt's I-130 petition, namely, that Mr. Somolu married Ms. Johnson for the purpose of evading immigration laws.  [Doc. 19 at 13–19].  Plaintiffs do not directly address the BIA's finding that Ms. Hunt had not shown that her marriage to Mr. Somolu was *bona fide*, which formed the separate first basis for the denial of the petition.  [*Id*.].  But Plaintiffs cannot prevail without overcoming both bases for the BIA's decision.

To overcome the BIA's decision that Ms. Hunt's petition should not be granted, she must show that she has met her burden, regardless of Mr. Somolu's past actions.  As the petitioner, Ms. Hunt "bears the burden of establishing eligibility for the benefit sought in an I-130 petition." *Pitman v. United States Citizenship & Immigr. Servs.*, 485 F. Supp. 3d 1349, 1358 (D. Utah 2020) (internal quotation marks omitted), *amended on reconsideration in part*, No. 2:17-CV-00166-CW, 2022 WL 2257178 (D. Utah June 23, 2022).  Ms. Hunt's burden to establish that Mr. Somolu is her *bona fide* spouse is distinct from the bar on immigration benefits to those who have ever

8

engaged in marriage fraud.  8 C.F.R. § 204.2(a)(1)(ii), (a)(2).  The Court thus must consider whether Plaintiffs have shown that the BIA erred in its determination that Ms. Hunt had not met her burden of proof.

As noted above, Plaintiffs did not directly address the issue of whether they are in a *bona fide* marriage.  Defendants noted Plaintiffs' failure to address this issue in their Response Brief, arguing that the issue was waived.  [Doc. 20 at 23].  Plaintiffs never filed a reply, and their Opening Brief was devoid of any reference to or discussion of evidence in the record that would show error on this score.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").  Instead, Plaintiffs merely noted that they are married and attended USCIS interviews together.  [Doc. 19 at 5].  The USCIS's decision, which was adopted by the BIA, supports its conclusion that Ms. Hunt has not established a *bona fide* marriage with both the discrepancies in interview testimony and Plaintiffs' failure to come forward with probative evidence of their intention to establish a life together even after the issue was presented in the NOID.  [Doc. 15-1 at 43–45, 47].  The Court does not find a clear error in judgment and must not reweigh the evidence.  Accordingly, the Court will affirm the BIA's decision.  *See Sorenson Commc'ns, Inc.*, 567 F.3d at 1221.  Because Ms. Hunt has not shown that the BIA's dispositive decision that she failed to show her own marriage was *bona fide* is in error, the Court need not reach the issue of immigration fraud.  *See Diallo*, 447 F.3d at 1282.  Likewise, Mr. Somolu's Form I-485 application is moot because it cannot be granted if the related Form I-130 petition is denied.  Accordingly, the Court respectfully **DENIES** the relief sought by Plaintiffs.  *See* 8 C.F.R. § 103.2(b)(1).

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) The relief requested in Plaintiffs' Complaint [Doc. 1] is respectfully **DENIED**;

(2) The Clerk of the Court is **DIRECTED** to enter final judgment in favor of Defendants and against Plaintiffs; and

(3) Defendants are **AWARDED** their costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and D.C.COLO.LCivR 54.1.

DATED:  November 15, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge